IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| THAD J. THOMPSON, | Civ. No. 16-00128 JMS-KSC |
|---|---|
| Plaintiff, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| vs. | |
| J. AFAMASAGA, STATE OF HAWAII, | |
| Defendants. | |

# **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

## **I. INTRODUCTION**

The court conducted a non-jury trial in this case on May 29-30, 2018. Pursuant to Federal Rule of Civil Procedure 52(a), the following constitute the court's Findings of Fact ("Findings") and Conclusions of Law ("Conclusions"). To the extent any Findings as stated may also be deemed to be Conclusions, they shall also be considered Conclusions. Similarly, to the extent any Conclusions as stated may be deemed to be Findings, they shall also be considered Findings. *See In re Bubble Up Del., Inc.*, 684 F.2d 1259, 1262 (9th Cir. 1982).

## **II. OVERVIEW/PROCEDURAL BACKGROUND**

This is a prisoner civil rights action in which Plaintiff Thad J. Thompson ("Plaintiff"), who was a pretrial inmate at Oahu Community

Correctional Center ("OCCC"), alleges that Defendant Adult Correction Officer ("ACO") J. Afamasaga ("Defendant" or "Afamasaga")[1] used excessive force against Plaintiff in violation of the United States Constitution.[2] During a strip-search, Defendant discovered an item concealed between Plaintiff's buttocks. A physical altercation followed, during which Plaintiff was injured. On May 29, a two-day bench trial commenced on Plaintiff's claim against Afamasaga. On June 6, 2018, Defendant filed a post-trial brief. ECF No. 137.[3]

The evidence presented at trial included live testimony from four witnesses[4] and seventeen exhibits submitted jointly by the parties, ECF No. 137, and admitted without objection. The court has heard and weighed all the evidence and testimony presented at trial, observed the demeanor of witnesses and evaluated their credibility and candor, and heard and considered Plaintiff's and Defendant's arguments. For the reasons set forth below, the court finds that Plaintiff failed to show by a preponderance of the credible evidence that the force Defendant

---

[1] The Complaint also names the State of Hawaii as a defendant. At trial, however, Afamasaga was the only remaining defendant. *See* ECF No. 5.

[2] The parties dispute whether Plaintiff also asserts a state-law battery claim. The court need not determine this issue because, as set forth below, the credible evidence fails to support such a claim.

[3] Plaintiff did not file an optional post-trial brief.

[4] The four witnesses are: Plaintiff, Defendant, OCCC ACO Danny Patelesio ("Patelesio"), and OCCC Nurse Neil Hayase ("Hayase").

purposely or knowingly used against Plaintiff was objectively unreasonable. That is, the court finds that Plaintiff failed to prove that Defendant used constitutionally excessive force against Plaintiff.

### III. **FINDINGS OF FACT**

1. On September 2, 2014, Plaintiff was a pretrial detainee. That morning, he was reassigned within OCCC from Annex 2 to the Special Holding Unit ("SHU").

2. Defendant and Patelesio were working at the SHU when Plaintiff arrived. An important part of an ACO's job is to maintain security in the facility. Defendant testified that part of his training as an ACO included identification of security hazards, techniques to deal with altercations such as the "takedown" of an inmate, and the use of minimal force to maintain control and obtain compliance from inmates who are aggressive and/or refuse to follow orders.

3. Each time an inmate enters the SHU, he is strip-searched to ensure that no weapons, drugs, or other contraband are brought into the SHU. During trial, the parties stipulated that it was appropriate for Plaintiff to be strip-searched upon his arrival at the SHU.

4. When Plaintiff arrived at the SHU, Patelesio was working in the sergeant's office, which is adjacent to the SHU entry area. Defendant met Plaintiff in the SHU entry area and proceeded to conduct the strip-search.

5. Defendant warned Plaintiff that any sudden movement may be viewed as an act of aggression that will result in a forced "takedown."

6. When Plaintiff arrived at the SHU, he had a rolled-up plastic bag containing a tea bag and packet of sugar partially concealed between his buttocks.

7. The credible evidence shows that Plaintiff did not fully comply with Defendant's orders during the strip search. For example, rather than hand his clothes to Defendant as directed, Plaintiff tossed or kicked them aside. Plaintiff did not spread his cheeks as ordered, and instead of fully squatting and coughing, Plaintiff performed a half "squat and cough." After Defendant glimpsed something in Plaintiff's buttocks, he ordered him to squat and cough again. Plaintiff responded by asking Defendant what he was talking about and why he had to squat again before then doing another half squat. Defendant saw the plastic bag between Plaintiff's buttocks, but did not know what the plastic bag contained.

8. In a loud, excited voice, Defendant asked Plaintiff what he had and ordered Plaintiff to hand over the plastic bag.

9. Plaintiff failed to hand over the item. Instead, Plaintiff pushed Defendant against the wall and grabbed the item with his other hand.

10. Defendant testified that from his training and observations working at OCCC, he knew that inmates often make weapons from ordinary items such as toothbrushes, razors, and rocks from the recreational area. Defendant further

testified that because Plaintiff was hiding the item and refused to hand it over, he thought it might be a weapon. Defendant testified that he acted in accordance with his training and attempted a "one-arm takedown." The court finds that Defendant reasonably believed that Plaintiff might have been concealing a weapon.

11. Defendant described a one-arm takedown as a maneuver whereby with one hand, he holds the inmate's arm by the ACO's hip, uses his leg to bend the inmate's knee, and at the same time, places his other hand on the inmate's shoulder blade to turn and guide the inmate down to the floor.

12. Plaintiff resisted the takedown and held the plastic bag close to his body. The force Defendant applied initially was insufficient to overcome Plaintiff's resistance. Thus, Defendant was required to apply slightly more force to complete the takedown. This resulted in Plaintiff landing face-down on the floor faster than he would have had he been compliant. Due to the small size of the SHU entry area, upon the completion of the takedown, Defendant landed on top of Plaintiff with his knee on Plaintiff's back.

13. During the takedown, Plaintiff was holding the plastic bag in one hand and Defendant was holding Plaintiff's other arm. Plaintiff did not submit to the takedown or brace his fall. Thus, his face hit the floor first causing facial injuries.

14. After landing on the floor, Plaintiff held the plastic bag under his body. Defendant attempted to pull Plaintiff's arm out from under his belly, to

5

obtain the plastic bag, and to secure Plaintiff's hands in handcuffs. During the entire takedown, Defendant repeatedly told Plaintiff in a loud voice to give him the item, get down, stop resisting, and give him his arm.

15. Defendant testified that because he thought Plaintiff might have a weapon, he did not consider stepping away from Plaintiff, but rather, quickly chose to execute the takedown.

16. Defendant further testified that he did not call for back-up because he was bigger than Plaintiff and believed he could safely execute the takedown alone. In addition, he knew that Patelesio could hear him yelling "get down, get down" and would come. And Defendant testified that even if had wanted to call for back-up, the incident happened so fast that there was no time to do so.

17. Patelesio testified that as soon as he heard the commotion, he left the sergeant's office and within a few seconds, entered the SHU entry area. He saw Plaintiff lying face-down on the floor and Defendant on top of Plaintiff. Patelesio testified that in accordance with his training and to maintain control of the situation, he secured Plaintiff's legs and then assisted Defendant in securing Plaintiff's hands. Patelesio testified that Defendant was trying to pull Plaintiff's hand out from under his body. The court finds Patelesio's testimony to be credible.

18. In accordance with prison policy following every takedown, Patelesio then escorted Plaintiff to the medical unit. Patelesio testified that Plaintiff did not complain of any pain on the way to the medical unit.

19. Neil Hayase is a registered nurse at OCCC who examined Plaintiff at the medical unit. He credibly testified that Plaintiff did not respond to questions about what happened, but learned from Patelesio that Plaintiff was taken down. Hayase determined that Plaintiff's upper lip was swollen and lacerated, and his right eye and cheek were swollen. In addition, Plaintiff complained of blurred vision in both eyes. Hayase testified that Plaintiff did not exhibit or complain about any other injuries.

20. Plaintiff's treatment was limited to stitches in his lip and instructions to seek further medical attention if his pain got worse.

21. Hayase does not recall Plaintiff seeking further medical treatment for pain.

22. Plaintiff's accounts of the incident and his injuries differ significantly from the credible testimony. For example, Plaintiff testified that he calmly complied with Defendant's orders; that he was wearing boxers during the strip search; that he thought it would be funny to bring in the tea and sugar; that he was not hiding the plastic bag, but fully expected it to be found; and that when Defendant ordered Plaintiff to hand over the plastic bag, he did so. Plaintiff further

testified that Defendant initiated the physical altercation without warning by delivering three punches to Plaintiff's face that were hard enough to make his head snap back before Plaintiff could respond. Plaintiff testified that he calmly and voluntarily laid down on his belly, but then Defendant jumped on him, rammed a knee into his back, slammed his face into the floor, grabbed and wrenched his arm back, and handcuffed him. Plaintiff testified that as a result of Defendant's conduct, he suffered three chipped teeth; a cut lip; a bruised right eye; flashes of light in his left eye that are continuing; great pain in his back, neck, shoulder, and arm; and emotional distress. Plaintiff testified that after he was cuffed, Defendant, not Patelesio, took him to the medical unit.

23. Plaintiff also testified that he did *not* immediately comply with all of Defendant's orders and did *not* hand over the plastic bag when Defendant asked for it. Plaintiff conceded that his accounts of the incident and injuries set forth in his Complaint, grievance, and answers to interrogatories differ from the others and conflicts with portions of his trial testimony. Moreover, Plaintiff's testimony that Defendant punched Plaintiff in the face three times with enough force to snap his head back before Plaintiff had time to react and push Defendant is not believable. Thus, taking into account Plaintiff's demeanor, poor memory (for instance, in claiming that Defendant, not Patelesio, took him to the medical unit), and

8

inconsistent accounts of the incident and his injuries, the court finds Plaintiff's testimony to lack credibility.

24. In contrast, based on his manner of testifying, memory, and overall demeanor, the court finds Defendant's testimony to be credible, and finds Defendant's version of events to be accurate and truthful.

25. Thus, the court finds that Defendant did not punch Plaintiff and that Plaintiff's facial injuries occurred when his face hit the floor at the end of the takedown. The court finds no credible evidence that Defendant intentionally harmed Plaintiff by kneeing him, ramming his face into the floor, or in any other manner. Instead, the court finds that Plaintiff was injured for the reasons explained by Defendant.

## IV. CONCLUSIONS OF LAW

1. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and/or 28 U.S.C. § 1343(a)(3).

2. The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from the use of excessive force which amounts to punishment. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (citing *Graham v. Connor*,

///

///

///

490 U.S. 386, 395 n.10 (1989)). Because Plaintiff was a pretrial detainee on September 2, 2014, the court applies the Fourteenth Amendment analysis.[5]

3. To prove a Fourteenth Amendment excessive force claim, "a pretrial detainee must show . . . that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473 (rejecting application of standard requiring pretrial detainee to also prove that "the officers were subjectively aware that their use of force was unreasonable"). In short, the Fourth Amendment's objective inquiry — "whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," *Graham*, 490 U.S. at 397, — applies to Fourteenth Amendment excessive force claims.

4. Thus, Plaintiff must prove by a preponderance of the evidence that: (1) Defendant purposely or knowingly used force against Plaintiff; (2) the force used against Plaintiff was objectively unreasonable; and (3) Defendant's conduct caused harm to Plaintiff. The evidence must be viewed "from the perspective of a reasonable officer on the scene, including what the officer knew at that time [and] not with the 20/20 vision of hindsight." *Kingsley*, 135 S. Ct. at 2473.

---

[5] In contrast, the Fourth Amendment governs claims alleging the use of excessive force "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen," *Graham*, 490 U.S. at 395, and the Cruel and Unusual Punishment Clause of the Eighth Amendment applies to excessive force claims asserted by convicted prisoners serving a sentence, *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Hudson v. McMillan*, 503 U.S. 1, 5 (1992)).

5. To account for the government's legitimate interest in managing prison facilities, when determining reasonableness, the court must "defer[] to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

6. Non-exclusive considerations that bear on the reasonableness of the force used include:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (citing *Graham*, 490 U.S. at 396). "[T]he most important *Graham* factor is whether the [plaintiff] posed an immediate threat to the safety of the officers or others." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (internal quotation marks and citation omitted). Moreover, the court must consider that officers are often "forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

7. Here, as found above, Defendant reasonably perceived that Plaintiff may have been attempting to bring a concealed weapon into the SHU, and Plaintiff

11

was refusing to follow Defendant's orders during the strip search. Thus, Plaintiff posed an immediate threat to the safety of both prison officials and inmates.

8. The amount of force used was no more than that necessary to eliminate the security threat posed by Plaintiff. Defendant tried to avoid physical force altogether by issuing a verbal order for Plaintiff to give him the plastic bag, but Plaintiff failed to comply and instead, resisted by pushing Defendant against the wall. And when Defendant reasonably determined that a takedown was necessary, the force he used initially was insufficient to overcome Plaintiff's resistance. The additional force then used was the minimal amount necessary to complete the takedown and obtain the plastic bag, even though Plaintiff suffered some unintentional injuries as a result.

9. In light of these factors and based on the totality of the credible evidence, the court finds and concludes that Plaintiff has failed to establish the second element of his excessive force claim. That is, Plaintiff has failed to show by a preponderance of the evidence that the force Defendant "purposely and knowingly" used against him was "objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473. The force was not excessive under the totality of the circumstances.

## V. **DECISION**

In accordance with the foregoing Findings and Conclusions, the court rules that Plaintiff has failed to prove his Fourteenth Amendment excessive force

claim against Defendant.⁶ The Clerk of Court is DIRECTED to enter Judgment in favor of Defendant and close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 26, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Thompson v. Afamasaga*, Civ. No. 16-00128 JMS-KSC, Findings of Fact and Conclusions of Law

---

⁶ And even if Plaintiff's Complaint is construed to assert a state-law battery claim, it fails. Under Hawaii law, "[n]on-judicial government officials . . . when acting in the performance of their public duty" are protected from tort liability by "a qualified or conditional privilege." *Towse v. State*, 64 Haw. 624, 631, 647 P.2d 696, 702 (1982); *see Kauhako v. Haw. Bd. of Educ.*, 2015 WL 5312359, at *13 (D. Haw. Sept. 9, 2015). "[C]lear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose" is necessary to overcome this privilege. *Towse*, 64 Haw. at 631, 647 P.2d at 702. And malice is "the intent, without justification or excuse, to commit a wrongful act, reckless disregard of the law or of a person's legal rights, and ill will; wickedness of heart." *Awakuni v. Awana*, 115 Haw. 126, 141, 165 P.3d 1027, 1042 (2007) (internal citations, quotations and brackets omitted). Based on the court's findings that Defendant acted in furtherance of the legitimate goal of maintaining security at the SHU and did not intentionally harm Plaintiff, the court concludes that Defendant is protected from state-law tort liability by this privilege.